UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| LORALI N. T.,[1] <br><br>          Plaintiff, <br><br>    v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] <br><br>          Defendant. | Case No.  4:22-cv-00234-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's denial of her applications for disability and disability insurance benefits and supplemental social security income. (Dkt. 1.)[3] The matter is fully briefed and at issue. (Dkt. 18, 19, 20.) Having carefully reviewed the parties' memoranda and the entire administrative record ("AR"), the Court will reverse and remand the decision of the Commissioner for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d).  Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

[3] As of December 1, 2022, the Federal Rules of Civil Procedure were amended to include Supplemental Rules for Social Security Review Actions under 42 U.S.C. § 405(g). As such, the Court adopts the terms "Complaint," "Plaintiff," and "Defendant," in lieu of the former terminology (i.e., "Petition," "Petitioner," and "Respondent").

# BACKGROUND

On May 7, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, claiming disability beginning August 18, 2017. (AR 13, 16, 331-332.) At the time of the alleged onset date, Plaintiff was 43 years of age. (AR 83.)

The application was denied initially and on reconsideration, and a telephonic hearing was conducted on May 13, 2021, before Administrative Law Judge ("ALJ") Wynne O'Brien-Pearsons. (AR 13.)[4] After considering testimony from Plaintiff and vocational expert (VE) Bruce Magnuson, the ALJ issued a decision on June 15, 2021, finding Plaintiff had not been under a disability since August 18, 2017, through the date of the decision. (AR 28.)

Plaintiff timely requested review by the Appeals Counsel, which denied her request for review on March 31, 2022. (AR 1-6.) Plaintiff timely appealed this final decision to the Court on June 2, 2022. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

---

[4] Two prior scheduled hearings set for October 6, 2020, and February 4, 2021, were continued at Plaintiff's request to allow her an opportunity to obtain legal representation. Plaintiff appeared at the May 13, 2021, hearing with legal counsel.

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

# DISCUSSION

The following issues are raised on appeal:

1.  Whether the ALJ erred because she did not properly evaluate the opinions of Kathy Hemming, PA-C, and Sterling Andelin, Ph.D., regarding Petitioner's mental impairments;

2.  Whether the ALJ's mental RFC is supported by substantial evidence because she rejected all opinion evidence concerning Plaintiff's mental limitations; and,

3.  Whether the ALJ properly evaluated Petitioner's subjective symptom testimony concerning the physical impairments caused by Petitioner's lupus.

No other issues are raised by Plaintiff on appeal.

## A.   The ALJ's Analysis

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[5] sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th

---

[5] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v)."

Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity since August 18, 2017. (AR 15-16.) At step two, the ALJ found Plaintiff

had the following medically determinable, severe impairments: "obesity; lupus;[6] bilateral

ankle fractures; major depressive disorder; and anxiety disorder." (AR 16.)

At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments which met or were medically equal to Listing 1.18

(Abnormality of a major joint(s) in any extremity), 1.19 (Pathological fractures due to

any cause), 1.22 (Non-healing or complex fracture of the femur, tibia, pelvis, or one or

more of the talocrural bones), 12.04 (Depressive, bipolar and related disorders), 12.06

(Anxiety and obsessive-compulsive disorders), 14.02 (Systemic lupus erythematosus), or

any listing under the guidance of SSR19-2p (Evaluation of cases involving obesity). (AR

16.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity

(RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

except for the following additional limitations:

> [T]he claimant can stand and walk for two hours in an eight-
> hour workday. The claimant can only occasionally climb
> stairs. The claimant cannot climb ladders, ropes, and
> scaffolds. The claimant is unlimited in her ability to balance.

---

[6] Lupus is defined as an autoimmune disease characterized by the body's immune system attacking its own tissues and organs. *See, e.g.*, https://www.webmd.com/lupus/systemic-lupus-erythematosus. The resulting inflammation can affect various body systems—including joints, skin, kidneys, blood cells, brain, heart, and lungs. *Id.* As such, symptoms of lupus vary from person to person but commonly include achy joints, fevers, swollen joints, constant and severe fatigue, rashes, hair loss, sensitivity to sun and other lights, seizures, etc. *Id.*

**MEMORANDUM DECISION AND ORDER - 5**

> The claimant can only frequently perform all other postural
> activities. The claimant can sustain only frequent noise. The
> claimant can sustain only occasional exposure to hazards. The
> claimant can perform only low stress work, defined as work
> with only occasional changes in the work setting, and no fast-
> paced production work. The claimant must be able to elevate
> her feet while sitting at six inches. The claimant will further
> be limited to only frequent bilateral handling and fingering.

(AR 19.)

The ALJ determined that, because of Plaintiff's limitations, her ability to perform all or substantially all of the requirements of light work was impeded by additional limitations. (AR 28.) Relying upon testimony from the vocational expert, the ALJ determined at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform given her age, education,[7] work experience, and RFC, such as: document preparer, addressing clerk, and call out operator. (AR 26-28.) All three jobs are at the sedentary exertional level. (AR 28.) The ALJ therefore determined that Plaintiff had not been under a disability from August 18, 2017, through the date of the ALJ's decision. (AR 28.)

**B.     Medical Opinions**

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Plaintiff's application was filed after March 27, 2017, and thus the ALJ's

---

[7] Plaintiff completed high school and three years of college. (AR 383.)

**MEMORANDUM DECISION AND ORDER - 6**

evaluation of the medical opinion evidence is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005).

The revised regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 416.920c(a). Instead, the regulations provide that the Commissioner "will not defer or give any specific evidentiary weight…to any medical opinion(s)… including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical

opinions…will be." 20 C.F.R. § 416.920c(c)(1). The consistency factor, on the other

hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he

more consistent a medical opinion(s)…is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will

be." 20 C.F.R. § 416.920c(c)(2).

The ALJ must "articulate…how persuasive [they] find all of the medical opinions"

and "explain how [they] considered the supportability and consistency factors." 20 C.F.R.

§ 416.920c(b). "The 'more relevant the objective medical evidence and supporting

explanations presented' and the 'more consistent' with evidence from other sources, the

more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021

WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL

1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain [her]

reasoning and specifically address how [she] considered the supportability and

consistency of the opinion, and [her] reasoning must be free from legal error and

supported by substantial evidence." *Id*. (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at

*7 (C.D. Cal. Jan. 26, 2021)) (citations omitted).

The ALJ needs to address only the remaining factors—treatment relationship,

specialization, and any other factors—when deciding among differing yet equally

persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b)(2)-(3). The

ALJ may address multiple opinions from a single medical source in one analysis. 20

C.F.R. § 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-

level articulation).

**MEMORANDUM DECISION AND ORDER - 8**

With these considerations in mind, the Court proceeds to its analysis of the two

medical opinions raised on appeal.

### 1.       Kathy Hemming, PA-C

Hemming, a treating source, completed a Mental Capacity Assessment

questionnaire ("MCA") on April 9, 2021. (AR 1001-1004.) Hemming utilized a check-

the-box form, wherein she indicated Plaintiff's degree of limitation resulting from

psychological factors—mild, moderate, or marked—in four broad functional areas.[8] In

the area of understanding, remembering, or applying information, Hemming opined

Plaintiff had no limitations. (AR 1003.)

In the area of concentration, persistence, or maintaining pace, Hemming opined

Plaintiff had mild limitations in her ability to initiate and perform a task Plaintiff knew

how to do, and to work at an appropriate and consistent pace, or complete tasks in a

timely manner. (AR 1002.) Hemming indicated Plaintiff had moderate limitations in her

ability to ignore or avoid distractions while working, and a marked limitation in her

ability to sustain an ordinary routine and regular work attendance. (AR 1002.) Last,

Hemming noted Plaintiff had an extreme limitation in her ability to work a full day

without needing more than the allotted number or length of rest periods during the day.

(AR 1002.) To support her findings, Hemming explained Plaintiff's chronic pain and

---

[8] The MCA form explained that a "mild" degree of limitation indicated a slight limitation in an ability to function independently, appropriately, effectively, and on a sustained basis; a "moderate" degree of limitation was indicative of fair functioning; a "marked" limitation indicated seriously limited functioning; and an "extreme" limitation indicated a complete inability to function independently, appropriately, effectively, and on sustained basis. (AR 1003.)

major depression prevented Plaintiff from sustaining a regular schedule and working a full day. (AR 1002.)

In the area of adapting or managing oneself, Hemming opined Plaintiff had a single extreme limitation in her ability to manage her psychologically based symptoms. (AR 1002.) Hemming explained that Plaintiff's depression symptoms could be "severe and difficult to manage." (AR 1002.) In the area of interacting with others, Hemming opined Plaintiff had a moderate limitation in her ability to respond to requests, suggestions, criticism, correction and challenges, and an extreme limitation in her ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (AR 1004.) She supported these opinions with an explanation that Plaintiff exhibited "volatile interaction[s] with staff." (AR 1004.)

The ALJ found Hemming's opinions unpersuasive for the following reasons: (1) the assessment was not well supported; (2) the check-the-box form was not well explained; (3) the form did not evidence consideration of Plaintiff's medical records as a whole; and, (4) the opinions were not consistent with medical evidence documenting Plaintiff's normal eye contact, normal speech, and linear and goal directed thought process. (AR 25.)

Plaintiff argues that Hemming's opinions were supported by her extensive treatment notes. (Dkt. 18 pp. 12-13.) Plaintiff also contends Hemming's opinions were consistent with other evidence in the record. (Dkt. 18 p. 13.) Had the ALJ credited Hemming's opinions, Plaintiff asserts that she would have been found unable to maintain

**MEMORANDUM DECISION AND ORDER - 10**

employment on a regular and continuing basis as required by SSR 96-8p.[9]

Defendant, on the other hand, argues the ALJ's reasoning was free from legal error and supported by substantial evidence. Defendant cites *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020), as support for the premise that an ALJ may permissibly reject check-the-box reports that do not contain an explanation for the physician's opinions. (Dkt. 19 p. 8.)

The Court finds the ALJ's analysis and conclusions are not supported by substantial evidence. First, the Court finds the ALJ erred by failing to consider Hemming's treatment notes. As a provider at Rehabilitative Health Services ("RHS"), Hemming both provided treatment to Plaintiff and had access to the notes of other staff who treated and observed Plaintiff between May of 2018 and November of 2020. (AR 555-760.) Throughout the period of Plaintiff's treatment at RHS, Hemming, clinical social workers, case managers, counselors, and community based rehabilitative service providers ("CBRS") documented Plaintiff's ongoing psychological impairment, including major depressive disorder, generalized anxiety disorder, and her worsening symptoms associated with both diagnoses. (AR 506-525, 555-705.) Hemming personally observed Plaintiff on eleven occasions and noted Plaintiff's deteriorating anxiety and depression symptoms, especially when faced with environmental stressors and lupus related

---

[9] When determining RFC, the ALJ must make a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. SSR 96-8p, 1996 WL 374184, at *3 "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* at *1.

**MEMORANDUM DECISION AND ORDER - 11**

symptoms of generalized pain; her struggle with following a routine; and her agitated moods, suicidal ideations, and feelings of hopelessness and worthlessness. (AR 575-579, 593-620, 621-628, 635-656.)

Plaintiff's other treating mental health providers at RHS frequently and consistently found Plaintiff to be depressed and anxious with worsening symptoms depending on the environmental stressors Plaintiff faced and the degree of her chronic pain. (AR 506-525, 555-705.) Aside from medications, Plaintiff was assigned a CBRS provider and a case manager, who assisted Plaintiff with functional and life skills such as: scheduling and attending appointments, including medication management appointments; "comprehending and following through with psychiatric providers orders;" arranging psychiatric evaluations; completing and submitting paperwork; following doctor's recommendations; and monitoring monthly bills. (AR 557-559, 564, 568-570, 667-670, 692-693.) In addition, Plaintiff's level of care for her mental health impairment was raised from level II in June 2019 to level IV[10] in June 2020. (AR 676, 688.)

The Court finds the treatment notes summarized above supportive and consistent with Hemming's opinions that Plaintiff suffered marked and extreme limitations in the areas of social interactions, management of psychological symptoms, routine sustainability, work attendance, and ability to work a full day. The Court therefore finds the ALJ's reason for rejecting Hemming's opinions without support from substantial

---

[10] While the treatment notes do not explain the specific parameters that comprise "RHS Level of Care," the increase in Plaintiff's level of care was indicative of Plaintiff's escalated need for assistance to navigate life and manage her psychological symptoms.

**MEMORANDUM DECISION AND ORDER - 12**

evidence in the record.

Next, the Court finds the ALJ's second and third reasons for rejecting Hemming's opinions are not supported by substantial evidence in the record. Hemming explained the basis for her opinions of marked or extreme limitations on the check-the-box form. (*See* AR 1002, 1004.) For example, Hemming identified marked limitations in Plaintiff's "ability to sustain routine and regular attendance at work" and extreme limitations in Plaintiff's "ability to work a full day without needing more than the allotted number or length of rest periods during the day." (AR 1002.) To support her assessment, Hemming wrote: "Chronic pain and major depression that makes her unable to sustain a regular schedule and work all day." (AR 1002.) Hemming also identified extreme limitations in Plaintiff's "ability to manage psychologically based symptoms" and, in support of this assessment, wrote: "Her depression symptoms can be severe and difficult to manage." (AR 1002.) Lastly, Hemming indicated extreme limitations in Plaintiff's "ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." (AR 1004.) Hemming again explained her opinion by noting Plaintiff had "volatile interactions with staff." (AR 1004.)

Further, while the form exhibits no overt consideration of the available medical records, Hemming's opined limitations are consistent with over two years of Hemming's and other RHS providers' treatment notes. (*See* AR 1002, 1004, 506-525, 555-705.) For example, all treatment providers at RHS, including Hemming, consistently recorded that Plaintiff struggled to follow a routine both in her medical treatment and in everyday life. (*See* AR 506-525, 555-705.) One of the repeated psychotherapy goals was to teach

**MEMORANDUM DECISION AND ORDER - 13**

Plaintiff how to identify and cope with her symptoms of depression and anxiety and manage environmental stressors. (AR 515, 520, 564-565, 568-570, 667-670, 692-693.) As discussed above, RHS provided Plaintiff with CBRS providers and case managers who assisted Plaintiff with managing her medical treatment, prescribed medications, and daily activities. (AR 557-559, 564, 568-570, 667-670, 692-693.) All these treatment notes support Hemming's opinion that Plaintiff had marked limitations in her ability to sustain a routine and regularly attend work, and that she had extreme limitations in her ability to manage psychologically based symptoms. (AR 1002.)[11]

Finally, the Court finds the ALJ's fourth reason is not a legitimate reason to discredit Hemming's opinions. The ALJ determined Hemming's opinions were inconsistent with the observations of other medical sources that documented Plaintiff exhibited clear speech, good eye contact, and had linear, goal oriented, organized, and intact thought process. (AR 1001-1004.) But, Hemming did not base her opinions on any deficiencies with Plaintiff's speech, eye contact, or any other physical factors. (AR 1001-1004.) This is evident from reviewing the purpose of the MCA—to indicate the "degree of limitation resulting from psychological factors." (AR 1003.) Hence, none of the four areas Hemming assessed in the MCA considered Plaintiff's physical capabilities,

---

[11] Moreover, Hemming's opinion that Plaintiff had extreme limitations in her ability to work without additional and prolonged rest periods is consistent with Plaintiff's own testimony during the May telephonic hearing. (AR 43-44, 50, 52.) For example, Plaintiff testified that, due to lupus, she suffered severe swelling in her lower extremities; fatigue; and pain, requiring her to elevate her feet and rest for prolonged periods. (AR 50, 52, 44.) In addition, Plaintiff frequently complained generalized lupus related pain, swelling, edema, and overall discomfort to Hemming and other providers at RHS. (AR 575, 582, 617-642, 652.)

**MEMORANDUM DECISION AND ORDER - 14**

including speech and eye contact. Instead, the MCA focused on Plaintiff's psychological symptoms, such as Plaintiff's ability to cope with stress, follow a routine, and manage her symptoms and treatment. (AR 1001-1004.)

Moreover, Hemming did not identify any limitations in the only area of the MCA that addressed Plaintiff's thought process and organization—Understanding, Remembering, or Applying Information. (AR 1003.) Consequently, Hemming's conclusions are consistent with other medical sources who noted Plaintiff's linear, goal oriented, organized, and intact thought process. (AR 1002-1004.)

Defendant argues that the holding in *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) supports the ALJ's rejection of Hemming's opinions. The court in *Ford* held that, while "an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire,…the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions...." *Ford*, 950 F.3d at 1155 (cleaned up). The Court is not persuaded. As discussed above, Hemming included explanations related to the opinions expressed in the check-the-box form. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (finding check-the-box form sufficient when accompanied by comments explaining the reasons for each response). Moreover, Hemming's treatment records support her opinions. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding error when the ALJ rejected the opinions expressed in a check-box form without considering the underlying treatment records).

Based on the foregoing, the Court finds the ALJ's reasons for rejecting Hemming's opinions lack substantial evidentiary support.

**MEMORANDUM DECISION AND ORDER - 15**

2.      **Sterling Andelin, Ph.D.**

Dr. Andelin performed a consultative psychological evaluation of Plaintiff on

August 14, 2018, and issued a report dated August 15, 2018. (AR 527 – 29.) Based on his

interview with Plaintiff, a review of her medical records, and the results of a mental

status exam, Dr. Andelin concluded that Plaintiff's "ability to perform work related

mental activities such as understanding, remembering, sustaining concentration,

persistence, interacting socially, and adaptability is impacted due to depression and

anxiety, but her major limitation relates to Lupus and associated fatigue and pain." (AR

529.) Dr. Andelin assigned a GAF score of 40.[12] (AR 529.)

The ALJ found Dr. Andelin's opinions unpersuasive because they were: (1) not

well supported; (2) not well explained; (3) non-specific regarding Plaintiff's maximal

functioning; (4) did not consider "much of the period at issue, or the claimant's

associated documentation;" and, (5) inconsistent with the medical evidence of record,

including observations revealing a normal and intact "fund of knowledge." (AR 26.) The

ALJ did not elaborate further.

Plaintiff argues the ALJ failed to adequately consider Dr. Andelin's opinions,

because she did not consider the examining relationship or the summary of Dr. Andelin's

interview with Plaintiff upon which his opinions were based; the opinions did not predate

the alleged onset date, and thus were pertinent to the period at issue following the onset

---

[12] The Global Assessment of Functioning, or GAF, scale is used to rate how serious a mental
illness may be. It measures how much a person's symptoms affect their day-to-day life on a scale of 0 to
100. *What Is the Global Assessment of Functioning (GAF) Scale?*, WEBMD, www.webmd.com/mental-
health/gaf-scale-facts (last visited 4/28/2023)..

**MEMORANDUM DECISION AND ORDER - 16**

date; and finally, his opinions should have been read in conjunction with the GAF score
of 40. (Dkt. 18 p. 16.)

Defendant contends that Dr. Andelin's opinion did not provide useful descriptions
of Plaintiff's maximum residual functional capacity. (Dkt. 19 p. 11.) As support,
Defendant again cites *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

The Court finds the ALJ's conclusions are not supported by substantial evidence
in the record. The ALJ's first two reasons for rejecting Dr. Andelin's opinion are wholly
conclusory and do not include a detailed discussion. While the ALJ is not required to
"discuss all evidence," she is required to "make fairly detailed findings in support of
administrative decisions to permit courts to review those decisions intelligently" and
"must explain why significant probative evidence has been rejected." *Vincent on Behalf
of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984); *see also Garrison v. Colvin*,
759 F.3d 995 at 1012–1013 ("an ALJ errs when he rejects a medical opinion … while
doing nothing more than ignoring it, asserting without explanation that another medical
opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a
substantive basis for his conclusion.").

Here, the ALJ did not provide any explanation to support her conclusion that Dr.
Andelin's opinions about Plaintiff's psychological limitations were not "well supported"
and not "well explained." (AR 26.) Instead, the ALJ used boilerplate language and
conclusory statements in a single paragraph as a basis for rejecting Dr. Andelin's
opinions. (AR 26.) As such, the Court cannot meaningfully review the ALJ's rationale.

Turning to the ALJ's third reason, the Court finds the ALJ failed to explain why

**MEMORANDUM DECISION AND ORDER - 17**

Dr. Andelin's opinion was not specific regarding Plaintiff's maximal functioning. Taken as a whole, Dr. Andelin's conclusions regarding the impact of Plaintiff's mental health impairment on her ability to perform work, in conjunction with the GAF score of 40, are specific and useful statements. Dr. Andelin did not simply state that Plaintiff was "limited" in her abilities. *See Ford*, 950 F.3d at 1156 (holding that statements regarding the degree of functioning limitations were not useful or specific when they were described in general broad term such as "limited" or "fair").[13] Rather, he opined that Plaintiff would have difficulty in specific functional areas critical to employment, such as understanding, remembering, sustaining concentration, persistence, interacting socially and adaptability, because of depression and anxiety. (AR 529.)

These statements may be read in conjunction with the assigned GAF score of 40. (AR 529.) A score between 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work…." *What Is the Global Assessment of Functioning (GAF) Scale?*, WebMD, www.webmd.com/mental-health/gaf-scale-facts (last visited 05/18/2023). The score range was indicative of the effect Plaintiff's symptoms had on her day-to-day living and

---

[13] This decision is supported by the Social Security Administration's Program Operations Manual (POMS), which states that medical consultants should not, in preparing a section III narrative of a mental RFC assessment, include any "nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations" because "[s]uch terms do not describe function and do not usefully convey the extent of [a] capacity limitation." POMS DI 24510.065.B.1.c., https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510065 (emphasis omitted) (last visited 05/18/2023).

correlated to the functional limitations noted in Dr. Andelin's opinion. Notably, the

ALJ's decision fails to mention the GAF Score. (AR 13 - 29.) Accordingly, the Court

finds the ALJ erred because she did not consider Dr. Andelin's opinions together with the

GAF score.

Next, the Court finds the ALJ's determination that Dr. Andelin's opinion, dated

August 15, 2018, did not consider the "period at issue" or the "associated

documentation," is contradicted by the relevant timeline and the available treatment

notes. The period from the alleged onset of disability to the date last insured is known as

the relevant period, where the date last insured is defined as the last date a person is

eligible for disability benefits. 20 C.F.R §§ 404.101, 404.131 (2022). Dr. Andelin's

opinion summarized Plaintiff's psychological limitations within the relevant period—

approximately one year after the onset date of disability and well before the ALJ's

decision dated June 15, 2021. (AR 15, 28.)  *Cf. Carmickle v. Comm's, Soc. Sec. Admin.*,

533 F.3d 1155, 1165 (9th Cir. 2008) (Medical opinions that predate the relevant period

are of limited relevance).

Furthermore, the ALJ failed to acknowledge that Dr. Andelin reviewed medical

records available to him at the time he provided his report. Dr. Andelin had three months

of records from RHS providers[14] and more than one year of treatment notes regarding

Plaintiff's lupus diagnosis and its associated symptoms[15] (which included pain and

---

[14] Plaintiff started her treatment with RHS and Hemming in May of 2018. (AR 555.)

[15] The first available lupus related treatment notes were dated January of 2017. (AR 458-486.)

**MEMORANDUM DECISION AND ORDER - 19**

fatigue) available to review. (AR 486, 555.) Dr. Andelin's report addressed both Plaintiff's psychological and physical limitations when opining about her work limitations. (AR 529.) Specifically, he noted that Plaintiff's "major limitation relates to lupus and associated fatigue and pain." (AR 529.)

Finally, the Court finds the ALJ's last reason for discounting Dr. Andelin's opinions is belied by the medical records relevant to Plaintiff's treatment for depression and anxiety. The ALJ cited three pages in the entire record that indicated Plaintiff had an "average" fund of knowledge. (AR 586, 634, 759.) Hemming made these observations during Plaintiff's regular appointments at RHS. (AR 586, 634, 759.) But Plaintiff's physical presentation at primary care appointments revealed relatively little about her overall mental health condition because it was only one factor medical providers evaluated in determining mental health impairment. *Moody v. Berryhill*, No. 16-CV-03646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. My 28, 2017) ("It is possible for a claimant to appear 'normal' at a medical appointment while at the same time suffering from debilitating depression or another mental illness.")

During these same appointments cited by the ALJ, Hemming documented that Plaintiff suffered symptoms consistent with major depressive disorder and generalized anxiety disorder. (AR 582, 632, 757.) For example, on December 20, 2018, Hemming increased the dosage of Cymbalta (Plaintiff's depression medication) and noted Plaintiff's feeling of despair and worthlessness, all while indicating Plaintiff had an "average" fund of knowledge. (AR 582-583, 586.)

Defendant argues "the ALJ's direct finding that Dr. Andelin's opinion was 'not

**MEMORANDUM DECISION AND ORDER - 20**

well supported' because it was 'not well explained' was reasonable" and discusses Dr. Andelin's opinion and its specific findings. (Dkt. 19 p. 11.) Defendant lists "mild limitations in understanding and remembering" as an example of inconsistency between Dr. Andelin's opinions and the medical records. (Dkt. 19 p. 12.) The Court does not find Defendant's argument persuasive, because the ALJ did not rely on the reasoning offered by Defendant as a basis for rejecting Dr. Andelin's opinion. An ALJ must specifically identify the evidence that she believes undermines a physician's opinion. *See Peterson v. Colvin*, 668 F. App'x 278, 279 (9th Cir. 2016) (holding that the ALJ "failed to specifically identify any objective medical evidence or activities that undermine medical opinion"); *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). If the ALJ fails to do so, it is improper for Defendant to attempt to rehabilitate the ALJ's decision on appeal by offering a post hoc rationale. *See Peterson*, 668 F. App'x at 279 ("We 'review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Here, the ALJ did not specifically identify the evidence in the record that undermined Dr. Andelin's opinions. Instead, the ALJ used boilerplate language and conclusory statements without any explanation. (AR 26.) Defendant attempts to rehabilitate the ALJ's reasoning by citing to other record evidence, not used by the ALJ, that could support the ALJ's finding. (Dkt. 19 p. 12-14; AR 26.) As such, Defendant's argument is a post-hoc justification that cannot serve as a basis for upholding the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 21**

Based on the foregoing, the Court finds the ALJ's rejection of Dr. Andelin's opinions lacks support from substantial evidence in the record.

### 3. The ALJ's Rejection of Medical Opinions Regarding the Level of Psychological Limitations

Although not identified by the parties as a discrete issue on appeal, Plaintiff in her opening brief asserted that the ALJ rejected not only Hemming's and Andelin's opinions, but also the opinions of the state agency psychologists who reviewed the record for Disability Determination Services at the initial and reconsideration level, leaving no basis for the mental RFC other than the ALJ's lay opinion. Pl.'s Brief at 16. (Dkt. 18.)

State agency medical consultants Dave Sanford Ph. D., and Michael Dennis Ph.D., reviewed the existing record on August 16, 2018, and October 31, 2018, respectively, and provided their opinions addressing Plaintiff's psychological limitations. (AR 86-87, 109-110.) They found Plaintiff experienced mild psychological limitations and "was not limited with regard to her mental capacity to perform work." (AR 87, 110.) A review of the ALJ's written determination indicates she found the state agency medical opinions unpersuasive for various reasons. (AR 25.), Yet, the ALJ fashioned an RFC, concluding Plaintiff had the capacity to "perform only low stress work, defined as work with only occasional changes in the work setting, and no fast-paced production work." (AR 19.)

The Court finds that the ALJ erred by using her own interpretation of medical records in formulating the RFC. "When an ALJ rejects all medical opinions in favor of his [or her] own, a finding that the RFC is supported by substantial evidence is less likely." *Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb. 1, 2011). Indeed,

"courts within the Ninth Circuit routinely find error where an ALJ rejects all medical source opinions and formulates an RFC based on the ALJ's own interpretation of the medical record." *Betten v. Saul*, 2019 WL 3939028, at *6 (D. Nev. July 9, 2019); *see also Diane K. v. Kijakazi.*, No. 1:20-CV-00520-DKG, 2022 WL 3213076, at *5 (D. Idaho Aug. 9, 2022); *Peter B. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3010162, at *3 (D. Or. July 28, 2022).

Here, absent an adequate explanation of the ALJ's reasoning and bases for the limitations assigned in the RFC, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined her own mental limitations for Plaintiff. This constitutes error. *Diane K. v. Kijakazi.*, No. 1:20-CV-00520-DKG, 2022 WL 3213076, at *5 (D. Idaho Aug. 9, 2022) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")). Because the ALJ rejected all of the medical opinions in the record concerning the limitations caused by Plaintiff's mental impairments, the Court is unable to surmise how the ALJ determined that Petitioner was capable of low stress work. Thus, the Court cannot conclude that the RFC was supported by substantial evidence.

## C. Subjective Symptom Testimony

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of Plaintiff's lupus symptoms could not be "wholly accepted" as consistent with the medical evidence and other evidence in the record. (AR 26.) The ALJ also indicated the record contained an alternate explanation for Plaintiff's unemployment

in that Plaintiff stated she stopped working because caring for her disabled daughter
made it hard to work. (AR 25.)

Plaintiff argues that the ALJ erred by rejecting Petitioner's subjective symptom
testimony concerning her lupus associated swelling, pain and fatigue without providing
clear and convincing reasons for doing so. (Dkt. 18 pp. 18-20.) Plaintiff maintains that,
had the ALJ credited these specific symptoms when formulating the RFC, the ALJ would
have found Plaintiff unable to sustain employment on a regular and continuing basis as
required by SSR 96-8p.

Defendant contends that Plaintiff's testimony was inconsistent with the objective
medical evidence, successful foot surgery, and Plaintiff's daily activities. (Dkt. 19 pp. 4-
6.) Defendant also argues that Plaintiff's unemployment can be explained by Plaintiff's
need to care for her young disabled daughter. (Dkt. p. 6.)

As explained below, the Court finds that the ALJ erred by rejecting Plaintiff's
testimony concerning the physical effects of lupus.

### 1. Legal Standard

Where, as here, the ALJ "determines that a plaintiff for Social Security benefits is
not malingering and has provided objective medical evidence of an underlying
impairment which might reasonably produce the pain or other symptoms she alleges, the
ALJ may reject the claimant's testimony about the severity of those symptoms only by
providing specific, clear, and convincing reasons for doing so." *Lambert v. Saul*, 980
F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89
(9th Cir. 2015)). "This requires the ALJ to 'specifically identify the testimony [from a

claimant] she or he finds not to be credible and… explain what evidence undermines that testimony.'" *Id.* (alterations in original) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).

The ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony," but a "boilerplate" or "non-specific" conclusion that a claimant's testimony was "not entirely consistent" with her medical treatment does not meet the minimum requirements for assessing credibility. *Id.* at 1277-78. Moreover, "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination." *Brown-Hunter*, 806 F.3d at 488. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

In assessing a claimant's complaints about pain, the ALJ may consider, among other factors: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors) (citations omitted).

Although "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain…[,] it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

### 2. Analysis

During the May telephonic hearing, Plaintiff testified she experienced fatigue and lupus-related pain in her extremities, and that these symptoms prevented her from performing continuous tasks. (AR 43-44, 50.) Moreover, Plaintiff explained her lupus induced fatigue caused her to lay down for prolonged periods of time (30 to 45 minutes) multiple times each day. (AR 52.) Plaintiff emphasized she suffered from severe swelling in her lower extremities due to lupus and explained she was forced to elevate her feet multiple times a day to relieve this symptom. (AR 50.)

The ALJ rejected Plaintiff's subjective symptom testimony related to lupus as inconsistent with medical records indicating Plaintiff retained the ability to ambulate

normally, stand and walk for at least two hours in an eight-hour workday, demonstrated intact strength, and had a "good range of motion in her upper extremities." (AR 24.) The ALJ also noted Plaintiff's ability to perform daily tasks, such as basic independent care, preparing simple meals, doing household chores, going outside, driving, caring for her child when needed, shopping, and handling finances. (AR 24.)

First, the Court finds the ALJ's conclusions concerning Plaintiff's physical abilities do not address the symptoms of pain, swelling, and fatigue resulting from Plaintiff's lupus. *Putz v. Astrue*, 371 Fed. Appx. 801, 802 (9th Cir. 2010) (rejecting statement about feeling well because it related to her heart condition rather than the chronic fatigue at issue in the case). At best, the ALJ cited evidence that Plaintiff had the physical ability to work under the given RFC, but only when she was not suffering pain, fatigue, and/or swelling related to lupus.

Plaintiff's testimony concerning fatigue, lower extremity swelling, and pain was consistent with Plaintiff's medical records. Even when treatment providers noted normal gait, her ability to care for herself, and a normal assessment of her musculoskeletal system (AR 492, 496, 535, 540, 645, 711, 716), Plaintiff still experienced fatigue and joint swelling that interfered with her ability to complete activities of daily living. (AR 491, 495, 534, 539, 643-644, 710, 715, 718, 720.) Specifically, PA-C Hemming and other medical professionals and caregivers at RHS consistently charted Plaintiff's struggle with lupus related symptoms —pain, swelling, fatigue, and edema—despite normal and intact strength, normal movements, and no clubbing. (AR 583-584, 590, 594, 598, 602, 606, 585, 591, 595, 599, 603, 607.)

**MEMORANDUM DECISION AND ORDER - 27**

Nor does the Court find the ALJ's reliance on Plaintiff's daily activities to be a convincing reason to discredit Plaintiff's testimony concerning her lupus-related fatigue and pain. An ALJ may properly consider a claimant's daily activities when evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(i). But here, the ALJ's reference to Plaintiff's testimony concerning her daily activities omitted the fact that Plaintiff's nine-year old daughter assisted her with household tasks because of Plaintiff's pain and swelling, and that Plaintiff required frequent and prolonged periods of rest because of fatigue. (AR 47-48, 52.)

The Court also finds unpersuasive Defendant's reliance on Plaintiff's successful ankle surgery in August of 2020 to bolster the ALJ's findings. Plaintiff's stress fracture and related treatment is another example of a condition unrelated to Plaintiff's lupus symptoms—fatigue, joint swelling, and generalized pain. For example, treatment notes from Idaho Foot & Ankle Center following the ankle surgery dated August 21, 2020, note that even after the surgical intervention, Plaintiff reported symptoms associated with lupus: muscle cramps and weakness, joint swelling and stiffness, generalized aches, and joint aches. (AR 787.) Therefore, a successful surgery that addressed a singular fracture unrelated to Plaintiff's reported lupus symptoms does not create inconsistency with medical records. Moreover, the ALJ failed to rely on this evidence in her written opinion, thereby rendering Defendant's argument insufficient as a post hoc rationale. *See Peterson*, 668 F. App'x at 279.

Last, the Court finds the ALJ's final reason for discrediting Plaintiff's testimony unsupported by substantial evidence in the record as a whole. Although the ALJ, and in

turn Defendant, cited Plaintiff's ability and need to care for her daughter as one reason to discredit her testimony, the Court finds the ALJ cherry-picked an isolated statement from Plaintiff's disability application without considering the record as a whole. *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (an ALJ cannot selectively rely on some entries in petitioner's records while ignoring others.) In Plaintiff's initial application for benefits dated May 14, 2018, Plaintiff reported that she could not work because of her own and her daughter's disability. (AR. 382.) However, during the hearing before the ALJ, Plaintiff testified that support staff assists her daughter four days a week. (AR 51.) Furthermore, there are extensive medical records that list a host of diagnoses and symptoms that affect Plaintiff's ability to work, including lupus related symptoms. (AR 489, 491-493,506, 513-514, 527-529, 582-585, 680-684, 743-746, 762-767.)

Based on the above, the Court finds the ALJ did not provide specific, clear, or convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom testimony.

## CONCLUSION

The Court concludes the ALJ erred in rejecting PA-C Hemming's and Dr. Andelin's medical opinions and in her evaluation of Petitioner's subjective symptom testimony. As a result, the ALJ's RFC determination is not supported by substantial evidence. A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

**MEMORANDUM DECISION AND ORDER - 29**

The Court finds remand is the appropriate remedy here to allow the ALJ to reconsider the medical opinion evidence and Petitioner's subjective symptom testimony. The Court will therefore reverse and remand this matter for further proceedings consistent with this opinion.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1)    The decision of the Commissioner of Social Security is **REVERSED**.

2)    This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)    This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: May 18, 2023

Honorable Candy W. Dale
United States Magistrate Judge